UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-cr-20032-JES-2 |
| | ) | |
| SEVILLE WILLIAMS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-cr-20032-JES-3 |
| | ) | |
| CLINTON WILLIAMS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

Seville Williams ("SW") and Clinton Williams ("CW"),[1] and six others were charged with committing a series of armed robberies over four months in 2006. Four defendants pled guilty and testified against SW, CW, and the others at trial. The jury found SW guilty of all five counts against him, which included: conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 (Count 1); one count of armed robbery in violation of 18 U.S.C. §§ 1951 and 2 ("Hobbs Act Robbery") (Count 2); one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) (Count 4); and one count of carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 3 and 5). CW was also found guilty of conspiracy to commit armed

---

[1] It is believed that SW and CW are not siblings but are related to one another.

bank robbery in violation of 18 U.S.C. § 371 (Count 1); two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d) (Counts 4 and 8); and two counts of carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 5 and 9).

The Court sentenced SW to a 546-month term of imprisonment, which consists of 60 months on Count 1, and 162 months on each of Counts 2 and 4 to be served concurrently; followed by 84 months on Count 3 to run consecutively to Counts 1, 2 and 4; and followed by 300 months on Count 5 to run consecutively to Count 3 and all other counts. Following his release, SW is to be placed on a five year term of supervised release. CW was sentenced to 444 months' imprisonment, which consists of 60 months on Counts 1, 4, and 8 to run concurrently; 84 months on Count 5, to run consecutively to Counts 1, 4, and 8; and 300 months on Count 9, to run consecutively to Counts 1, 4, 5, and 8. Upon release from imprisonment, CW will serve a 5-year term of supervised release.

CW and SW now move for reductions in their sentences pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). (Docs. 420, 419). Both motions assert, in part, that there is an "extraordinary and compelling" basis for early release under § 1B1.13(b)(6), the Sentencing Commission's recently revised policy statement addressing *Unusually Long Sentences*. *Id.* (citing U.S.S.G. § 1B1.13(b)(6) (eff. Nov. 2023)). Defendant SW has also filed a Notice of Supplemental Authority (Doc. 423). The Government has filed responses (Docs. 428, 424), and SW and CW have replied (Docs. 429, 426).

On July 11, 2024, the Court heard oral arguments by the parties, with SW represented by Steven Ballew and Emily Wilson of Wilkie Farr & Gallagher, LLP; CW represented by Elizabeth Costello and Ardis Strong of Debevoise & Plimpton, LLP; and the Government represented by

AUSA Timothy Bass. Counsel appeared in person with SW and CW participating by video. For the reasons indicated herein, (Docs. 420 and 419) are DENIED.

## BACKGROUND

In early 2006, SW, CW, and several co-conspirators, engaged in a series of armed bank robberies in Kankakee County, Illinois. The Government has described the robberies as "brash and violent," noting that SW and his co-conspirators brandished weapons, and pistol-whipped and threatened to shoot victims in the head. During one of the robberies, SW instructed a female bank employee to disable the alarm, telling her: "bitch disarm the alarm or I'll shoot your head off." He also grabbed the employee's hair and threatened to blow her head off if she did not open the vault. After she did so, and he obtained the money, SW dragged the employee through the lobby by her hair and threw her to the floor. When the employee looked up, she saw him waving the gun and then heard one or two shots. This victim described the incident as having a lasting impact on her life. [428 at 2-3]. CW acted as the get-away driver in two of the bank robberies. He did not enter either bank or touch a firearm.

SW received a sentence of 45.5 years with 33 of those years attributable to the "stacked" firearms charges; consecutive terms of seven years on the first offense and a mandatory 25 years for the second offense. CW received a sentence of 37 years with 32 of those years attributable to the "stacked" firearms charges.

SW and CW have filed motions for early release under 18 U.S.C. § 3582(c)(1)(A), known as the compassionate release statute. Section 3582(c)(1)(A) allows a defendant to seek, and the courts to grant, a reduced sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] if it finds that ... extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission." §3582(c)(1)(A). *United States v. Black*, No. 05-70-4, 2024 WL 449940, at *3 (N.D. Ill. Feb. 6, 2024)). Compassionate release is a departure from the general rule that district courts lack authority to modify a sentence once it has become final. *United States v. Carr*, 568 F. Supp. 3d 950, 951–52 (N.D. Ill. 2021), *aff'd*, 21-3108, 2022 WL 1421441 (7th Cir. May 5, 2022) (citing *United States v. Anderson*, 583 F.3d 504, 508 (7th Cir. 2009)).

Defendants' motions for compassionate release are based on recent amendments to the United States Sentencing Guidelines policy statements which, they assert, authorize the Court to grant the requested relief. The most notable of the policy statement amendments, USSG §1B1.13(b)(6), promulgated November 1, 2023, provides for the reduction of an "Unusually Long Sentence." *See id.*:

> *Unusually Long Sentence*.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

As clearly stated, this policy statement allows a court, under the identified circumstances, to consider retroactive changes in the law as an extraordinary and compelling basis for granting relief for an unusually long sentence. *See also* § 1.13(c) which affirms that, while non-retroactive changes in the law will not generally be considered extraordinary and compelling reasons for early release, § 1.13(b)(6) provides an exception. *See United States v. Willis*, No. 14-83, 2024 WL 1715267, at *2 (N.D. Ind. Apr. 22, 2024).

This policy statement amendment raises the issue whether, as claimed by the Government, the Commission has exceeded its Congressional grant of authority in promulgating § 1.13(b)(6). In *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021), a decision that pre-

dated §1.13(b)(6), the Seventh Circuit found that subsequent changes to § 924(c) could not be retroactively applied to grant compassionate release "[g]iven Congress's express decision to make the First Step Act's changed to § 924 (e) apply only prospectively." As a result, the amendment to § 924(c) could not "constitute an 'extraordinary and compelling' reason to authorize a sentence reduction."[2] Currently, there is no Seventh Circuit guidance as to whether, after § 1.13(b)(6), *Thacker* remains good law or whether it has been abrogated, although several cases raising this issue are pending on appeal. In the meantime, it is up to the trial courts in this district to divine whether we are to apply § 1.13(b)(6) as a valid exercise of the Commission's Congressionally granted authority or, consistent with *Thacker*, find it is not to be applied as it is outside the Commission's Congressionally granted authority. There have been a series of recent and discordant district court decisions on this issue with the apparent majority upholding *Thacker*. Before further addressing these issues, however, the Court will discuss the legislative milieu in which this conflict has arisen.

## LEGISLATIVE HISTORY

In 1984, Congress passed the Sentencing Reform Act, which in part, created the United States Sentencing Commission ("Commission"), tasked with addressing sentencing disparities that arose under the then-existing indeterminate sentencing system. *Mistretta v. United States*, 488 U.S. 361 (1989). The Commission was established as "an independent body in the Judicial Branch with power to promulgate binding sentencing guidelines establishing a range of determinate sentences . . ." *Id.* Under this grant of authority, the Commission is to periodically "review and revise" the guidelines they issue. *Id.* (citing 18 U.S.C. § 994 (o)), and is to "describe

---

[2] Even before the Commission promulgated §1.13(b)(6), there was a split among the circuits as to whether a non-retroactive change in the law is sufficient to establish extraordinary and compelling reasons under § 3582(c)(1)(A). The Seventh Circuit position holds a "slight majority," that it does not, consistent with the Third, Fifth, Sixth, Eighth, and D.C. circuits. *See United States v. Spradley*, No. 98-38, 2024 WL 1702873, at *4 (S.D. Ind. Apr. 18, 2024) (citing cases from the various circuits).

what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Black*, 2024 WL 449940 at *4 (citing § 994(t)).

In 2010, Congress enacted the Fair Sentencing Act, ("Act"), Public Law 111–220; 124 Stat. 2372, to "restore fairness to Federal cocaine sentencing" by reducing the different treatment given cocaine powder and crack cocaine offenses. *Dorsey v. United States*, 567 U.S. 260, 266-69 (2012). The 2010 Act was not retroactive, however, so, it did not help anyone sentenced before the August 3, 2010 enactment date. However, in 2018, Congress enacted the First Step Act, ("FSA"), PL 115-391, 132 Stat 5194, which amended the penalties for certain federal crimes, including § 924(c). § 403(a); *Thacker*, 4 F.4th at 572. Section 403(b) of the FSA amended § 924(c) to abolish the 25-year mandatory enhancement in cases where, as here, the initial and subsequent firearms offense arose from the same case. *Id*. If sentenced today, SW and CW would each face an additional consecutive sentencing range of 10 years to life on the firearms charges, (5 years for each of the charges)[3], rather than 33 years to life (seven years for the first offense and 25 years for the second).

The FSA also extended the reduced penalties of the Fair Sentencing Act to offenses "committed before August 3, 2010." *See* § 404(a). This "pave[d] the way for people sentenced before August 3, 2010, to seek a sentence reduction." *United States v. Fowowe,* 1 F.4th 522, 525 (7th Cir. 2021) (citing *United States v. Sutton*, 962 F.3d 979, 982 (7th Cir. 2020)). However, the

---

[3] While SW's Count 3 brandishing enhancement might otherwise carry a seven year penalty, this finding was not made by the jury, as required under *Alleyne v. United States*, 570 U.S. 99, 116 (2013) (finding brandishment "a distinct and aggravated crime" which must be "submitted to the jury and found beyond a reasonable doubt.").

FSA amendment to § 924(c) was clearly meant to apply prospectively with a limited exception.

*See* § 403(b) "APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." In other words, the only retroactive application was for individuals who had committed an offense before the amendment went into effect but sentenced after the effective date. Here, of course, both Defendants were sentenced well before the 2018 FSA enactment.

Defendants assert, however, that since § 1.13(b)(6) provides for a retroactive application in the case of an unusually long sentence, the FSA amendment to § 924(c) may now be applied to them. If this were done, the sentences they have received on the firearms charges could potentially be reduced by decades. The Government disputes this, claiming that § 1.13(b)(6) cannot be applied here as it is contrary to Seventh Circuit precedent and represents overreach as the Sentencing Commission did not have the authority to, in essence, amend § 924(c) to allow for a retroactive application.

## ANALYSIS

It is uncontroverted that the Commission generally has the authority to promulgate policy statements that allow for reductions in sentencings, including retroactive ones. *See* § 1B1.10; *United States v. McGhee*, No. 24-1065, 2024 WL 2105466, at *2 (7th Cir. May 10, 2024) ("Section 3582(c)(2) authorizes a district court to reduce 'a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" (citing *Hughes v. United States*, 584 U.S. 675, 685-86 (2018)). Furthermore, the Commission's policy statements are to be afforded legislative effect and are to be applied by the courts. *See* *Concepcion v. United States*, 597 U.S. 481, 495 (2022) ("Congress expressly cabined district

7

courts' discretion by *requiring courts to abide by the Sentencing Commission's policy statements*" when deciding motions under § 3582(c)(1)(A)); *Batterton v. Francis*, 432 U.S. 416, 425 (1977). The Government asserts, however, that § 1.13(b)(6) causes § 924(c) and other FSA amendments to criminal statutes to have a retroactive application, when Congress did not intend this.

The Court does not dispute that the Commission generally had the authority to promulgate § 1.13(b)(6), offering relief from an unusually long sentence. What it does dispute is that the Commission had the authority to apply it retroactively to various FSA amendments which Congress had not drafted to be prospective in nature. It has been argued, however, that Congress tacitly approved § 1.13(b)(6) as the amendment was submitted to it 180 days before the enactment date, giving Congress an opportunity to modify or disapprove it.[4] *See* 28 U.S.C. § 994(p):

> The [Sentencing] Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress.

However, this "tacit approval" is not enough. In *Rapanos v. United States*, 547 U.S. 715, 750 (2006), the Supreme Court considered whether a regulation promulgated by the Army Corps of Engineers impermissibly extended the scope of the "navigable waters," statute, 33 U.S.C.

---

[4] *Spradley*, 2024 WL 1702873, at *8.

§ 1362(7). It found the regulation's interpretation of the statute too broad and otherwise "impermissible.' *Id*. at 737. The Court acknowledged that Congress had not objected when the regulation was proposed, but did not find this evidence of "Congress' deliberate acquiescence" but rather "Congress's failure to express any opinion." *Id*. at 750. The Opinion stated, absent "*overwhelming evidence*" of Congressional acquiescence to an agency proposal, it was "loath to replace the plain text and original understanding of a statute with an amended agency interpretation." *Id*. (citing *SWANCC v. U.S. Army Corps. Of Engineers*, 531 U.S. 159, 197 n.5 (2001) (adding emphasis); *see Brown v. Gardner*, 513 U.S. 115, 121-22 (1994) (nullifying Veterans' Affairs regulation which was inconsistent with statute, despite 60-year "Congressional silence" as to the regulation).

In the case at issue, Congress amended § 924(c) to decrease the penalties for second or subsequent crimes involving firearms. Congress did not provide for a full-scale retroactive application of the amendment, narrowing it to cases where a defendant had committed a crime before the amendment went into effect but not sentenced until after. The Commission, through § 1.13(b)(6), seeks to apply § 924(c) and other FSA amendments to those who were sentenced *before* the amendments went into effect. "Sentencing reform is generally prospective." *United States v. Sparkman*, 973 F.3d 771, 772 (7th Cir. 2020) (denying a sentence reduction under § 924(c) where the defendant was sentenced "years before the enactment of the First Step Act."). This is a radical departure, which goes beyond providing illustrative examples of "extraordinary and compelling" reasons for sentence reductions; or the issuance of policy statements governing the appropriate use of sentence modifications. *See generally* 28 U.S.C. § 994 *Duties of the Commission*. This rewrites § 924(c) to provide prospective relief to individuals who, heretofore, were not entitled to such relief. The Court sees nothing to support that Congress intended that

§ 924(c) should apply retroactively as § 1.13(b)(6) would have it do. The fact that Congress made a single and limited exception gives further credence to the position that § 924(c) was not intended to have a general retroactive effect.

It is further noted that there was dissent in the committee itself, with three of the seven, Commissioners; Wong, Murray, and Bom, opposing the § 1.13(b)(6) amendment. At an April 5, 2023 hearing, Commissioner Wong stated on behalf of the minority:[5]

> Unfortunately, however, in our view, today's policy statement [ §1.13(b)(6)] goes further than the Commission's legal authority extends. In effectively promulgating a form of second local legislation through the vehicle of compassionate release, we are concerned that the Commission is about to make a seismic structural change to our criminal justice system without congressional authorization or directive. We cannot be party to that effort.

It is the Court's position that, while the Commission has the authority to promulgate policy statements and to include unusually long sentences as an extraordinary and compelling reason for release, it cannot use §1.13(b)(6) as a vehicle to make the FSA statutory amendments retroactive where there is no evidence of such intent by Congress. *See* § 403(b); *Rapanos*, 547 U.S. at 750; *Gardner*, 513 U.S. at 121.

The Court's position on this issue is consistent with Seventh Circuit precedent, finding that non-retroactive changes in law are not, on their own, extraordinary and compelling reasons for a sentence reduction. In *Thacker*, 4 F.4th at 574, which pre-dated § 1.13(b)(6), the court considered the FSA amendment to § 924(c) and found that intervening developments in sentencing law do not, without other reasons, constitute "extraordinary and compelling" reasons for a sentence reduction. *Id*. at 573-76. The court found "there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *Id*. at 574 (citing *United States v. Maumau*, 993 F.3d 821,

---

[5] April 2023 Public Meeting Transcript (ussc.gov) at 60.

838 (10th Cir. 2021)). *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) ("In *Thacker* we emphasized that the authority in the compassionate release statute 'only goes so far' and 'cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in' other statutes."). *See also United States v. Bartlett,* 2023 WL 2966538, at *5 (N.D. Ind. Apr. 17, 2023) (discussing *Thacker* and stating: "[s]till, the court of appeals made it clear that the required extraordinary and compelling reason supporting compassionate release 'cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c).'").

The Seventh Circuit has staunchly maintained its position in *Thacker*, even after *Concepcion v. United States*, 597 U.S. 481 (2022), where the Supreme Court held "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. For example, in *United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022), the Seventh Circuit distinguished *Concepcion*, which arose in the context of a resentencing under § 404. There, it interpreted *Concepcion* as establishing that where a defendant is resentenced due to substantive changes made by the FSA, "the judge may consider everything that would have been pertinent at an original sentencing." *Id*. This would not apply to compassionate release motions unless the district judge vacated the sentence and undertook "a full resentencing proceeding." *Id*.; *United States v. Brown*, No. 22-2465, 2023 WL 3144553, at *1 (7th Cir. Apr. 28, 2023).

Still, there is the argument that the *Thacker* line of cases predates the § 1.13(b)(6) policy guidelines amendment and *Thacker* would be decided differently today. There is yet no Seventh Circuit post-§ 1.13(b)(6) decision, although several cases are currently on appeal. Also, as noted, the Supreme Court has not weighed in, so far declining to take up the matter.

11

This issue has recently been extensively examined in several district courts in this circuit with differing results. In *Black*, 2024 WL 449940, at *3, the court characterized § 1.13(b)(6) as an outright rejection of *Thacker* and an impermissible overreach by the Commission. That case, similar to the one here, involved a challenge to an unusually long sentence under the FSA amendment to § 924(c). The court noted that § 924(c) contained no evidence of Congressional intent that it was to have a retroactive application. *See id*. *See also United States v. Buggs*, No. 99-86, 2024 WL 2130566 (N.D. Ind. May 13, 2024) (stating "this court agrees with the *Black* court that, in light of its holding in *Thacker*, the Seventh Circuit is likely to find that the Sentencing Commission exceeded its authority in issuing § 1B1.13(b)(6). Accordingly, the court finds that § 1B1.13(b)(6) does not serve as a basis for compassionate release, and denies defendants' request for relief based on this subsection."). *United States v. Robinson*, No. 97-56, 2024 WL 2816925, at *5 (S.D. Ind. May 31, 2024). ("Here, given the Seventh Circuit's interpretation of the statute in *Thacker* and its progeny, the Commission's interpretation must yield to judicial determinations."); *United States v. Tichenor*, No. 09-00171, 2024 WL 3252501, at *5 n.2 (S.D. Ind. June 28, 2024) (holding that "but for now, [Thacker's] precedent is clear, and our obligation is to follow it . . .").

The opposite result was reached in *Spradley*, 2024 WL 1702873, at *5, where the defendant had been sentenced under then-mandatory sentencing guidelines later determined in *United States v. Booker*, 543 U.S. 220, 226-27 (2005), as merely advisory. The *Spradley* court granted compassionate release, finding authority under § 1.13(b)(6). The court believed that the Government had, tacitly at least, recognized this authority when it opposed petitions for writs of certiorari, including one in *Thacker*, advocating that the Commission was the proper entity to be "entrusted with resolving the split." *Id*. at *6. *Spradley* also asserted it was likely that the

12

Seventh Circuit would now apply § 1.13(b)(6), citing *United States v. Williams*, 65 F.4th 343, 345 (7th Cir. 2023). There, the Seventh Circuit, aware of the proposed §1.13(b)(6) amendment which was not yet in effect,[6] stated: "We have no crystal ball, and so we do not know which path the [Supreme] Court is likely to take, should it decide to resolve this issue and not leave the ultimate choice up to the Sentencing Commission. All we can say is that the issue is teed up, and either the Commission or the Court (we hope) will address it soon." *Id*. The *Williams* court upheld the district court's denial of the motion for compassionate release under § 3553(a), rather than *Thacker*, but stated as to *Thacker*, "[u]ntil the Commission definitively says otherwise, we will not deviate from our current understanding." *Id*.

In a case arising in this district, *United States v. Smith*, No. 06-30072, Doc. 43 (C.D. Ill. May 1, 2024), the court adopted the holding in *Spradley*. It found that the Sentencing Commission had the requisite authority to promulgate § 1.13(b)(6) and that *Thacker*, decided before the amendment, no longer controlled. *Id*. at 13 (citing the *Williams* "crystal ball" statement). This Court respectfully disagrees, finding that § 1.13(b)(6) is not binding as it was promulgated outside the Commission's grant of authority, and that *Thacker* remains good law. As a result, the motions of SW and CW are denied to the extent they rely on § 1.13(b)(6) to support that theirs are unusually long sentences and an extraordinary and compelling reason for relief under § 3582(c)(1)(A).

The Court will go on to individually discuss SW's and CW's remaining grounds for relief.

---

[6] *Id*. at 345 (citing Sentencing Guidelines for United States Courts, 88 Fed. Reg. 7180, 7184 (proposed Feb. 2, 2023)).

## SEVILLE WILLIAMS'S REMAINING CLAIMS

§ 1B1.13(b)(5) Other Reasons

In addition to his claims for a sentence reduction under § 1.13(b)(6), SW also asserts a right to relief under § 1B1.13(b)(5). This policy amendment has been described as a "catch-all," as it can encompass all or parts of § 13(b)(1)-(4) which consider: a defendant's medical condition, the mental or physical deterioration of a defendant 65 years or older; a defendant's exigent family circumstances including the incapacitation of defendant's partner or the caretaker of his children; and whether defendant was a victim of abuse at the BOP and the misconduct resulted in a confession by the perpetrator or a finding of guilt. Relief under this section can be based on these circumstances alone or in combination, or on circumstances "similar in gravity" to those specifically identified in § 1.13(b)(1)-(4). *See* § 1.13(b)(5). SW requests early release based on the physical abuse he suffered at USP Thomson; his youth at the time of the offenses; and the alleged sentencing disparities which have existed, and which will continue to exist, if his request is not granted.

### *Physical abuse at USP Thomson*

Maureen Baird, a retired BOP warden, has reviewed SW's prison records and provided a Declaration in support of his motion. Ms. Baird attests that since being housed in the BOP, SW has been held "at some of the most violent and dangerous prisons in America." She recounts SW's claim that on December 30, 2021, at USP Thomson, he and his cellmate were in a physical altercation. The guards responded, spraying SW with mace, and shooting him with bean bag rounds in the eyes and ribs. He was thereafter placed in a restraint chair where he was held for 20 hours without any release of the restraints or opportunity to use the bathroom. SW has told Ms. Baird that, during the ordeal, he was forced to urinate and defecate on himself. SW has provided

photographs of himself in the restraint chair (Doc. 420-10), as well as medical records to corroborate that he was restrained during this period, although he was evaluated by nursing staff at approximately 4-hour intervals. (Doc. 420-9 at 1-18).

The Court finds that this claim, while not containing all the elements necessary under § 13(b)(4), is "similar in gravity" to an offense under that subsection and may rightly be asserted under § 13(b)(5). While the incident evidenced harsh and inhumane treatment, it was apparently an isolated event that occurred more than two years ago. The Court does not find this alone, or in combination with the other claimed reasons, is a sufficient basis on which to reduce SW's sentence by some 27 years.

### *Youth at the Time of the Offenses*

SW also cites his age at the time of the offense, 23, as a reason for early release. He indicates that he is now 40, in "middle age" and, statistically, less likely to recidivate. (Doc. 420-1 at 36). The Government claims that the BOP has assessed SW at a high risk to recidivate (Doc. 428 at 7), but the referenced docket entry contains a series of medical records and does not support this. As a result, the Court gives this no further consideration. It notes, however, that a defendant's youth at the time of the offenses is not an enumerated reason for early release under § 1.13(b)(1)-(4). The Court further finds that, even in combination with the other claimed reasons, this is not similar in gravity to the § 1.13(b)(1)-(4) factors so as to qualify for release under § 1.13(b)(5).

### *Sentencing Disparities*

SW also asserts that the inter-circuit sentence disparities "caused by *Thacker*" have resulted in a lack of uniformity in the federal courts, resulting in an extraordinary and compelling reason for release under § 1.13(b)(5). (Doc. 420-1 at 37). SW cites the U.S. SENT'G COMM'N,

2022 ANNUAL REPORT AND SOURCEBOOK OF FEDERAL SENTENCING STATISTICS at 6 (2022),[7] to support that the success of compassionate release motions "varied significantly depending on the circuit or district in which they were filed." (Doc. 420-1 at 37). SW notes that circuits that apply non-retroactive changes to § 924(c) to motions for compassionate release will indisputably grant them in higher numbers than those circuits, like the Seventh, which do not. However, for the reasons earlier identified, this Court is bound by *Thacker* and may not disregarded it. *See Black*, 2024 WL 449940, at *4; *Brock*, 39 F.4th at 465; *King*, 40 F.4th at 595. Furthermore, the Court cannot agree that *Thacker* caused the split as a majority of the circuits, albeit slight, agrees with the Seventh Circuit.

### § 3553(a) factors

A court, considering a motion for compassionate release is also to consider whether relief is warranted under the sentencing factors set forth in § 3553(a) which provides:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

---

[7] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/2022-Annual-Report-and-Sourcebook.pdf.

SW urges the Court, under the § 3553(a)(1) factors to consider his history and characteristics. These include his age at the time of the offense; that he was initially raised by a crack-addicted mother, often homeless, and eventually placed in foster care; and that he suffered trauma while incarcerated in the BOP. In support of his positive characteristics, Defendant asserts that he suffers from ADHD, and despite this, had made an effort to obtain his GED, investing significantly more than the minimum 240 hours generally required. Defendant has also participated in numerous other Release Preparation programs and has held various work positions while incarcerated. While these facts are significant, § 3553 (a)(1) also requires that the Court look at the nature and circumstances of the offenses. SW's crimes were violent and demeaning and, at least as to one of his victims, life-altering.

Additionally, while SW acknowledges a checkered disciplinary history, he asserts that this is not cause to deny compassionate release. However, the Government has provided evidence to establish that SW received approximately 30 disciplinary citations from 9/3/2009 through 12/09/2020. These were for a variety of infractions, including; fighting, assault without serious injury, multiple incidents of possessing a dangerous weapon, and possessing drugs/alcohol. SW notes the declaration of Ms. Baird who attests that life in federal prisons is premised on a "dog-eat-dog" and "survival of the fittest" mentality. Ms. Baird notes that SW has since renounced his membership in the Vice Lords gang and believes "he is no longer the same person who entered the corrections environment 18 years ago." *Id*. at 40. Still, the Court finds that the violent nature of SW's crimes and the violence and misconduct in which he has engaged while imprisoned, militate against early release.

The Court finds, further, that early release would deprecate the seriousness of the offenses, undermine respect for the law, and fall short of providing just punishment. *See*

17

§3553(a)(2)(A). Similarly, the deterrence factor of § 3553(a)(B) would be undermined if SW were granted early release. Furthermore, the Court is not convinced that SW would pose no risk to the public should he be released. While he has a re-entry plan, to live with his Aunt and Uncle in Beloit, Wisconsin, his Uncle's attestation that he would help SW get a job at Frito Lay, which has been known to employ those formerly imprisoned, is not a guarantee of employment.

Accordingly, after due consideration of the factors enumerated in §3553(a) the Court finds that SW would likely pose a danger to the public in the event of his release, and must deny SW's motion.

## CLINTON WILLIAMS'S REMAINING CLAIMS

In addition to his claims for a sentence reduction under § 1.13(b)(6), SW also asserts a right to relief under §.13(b)(1)(B)(ii) and § 1.13(b)(5).

§ 1.13(b)(1)(B)(ii) – Cognitive Impairment

Under § 1.13(b)(1)(B)(ii) there exists an extraordinary and compelling reason for compassionate release if "[t]he defendant is suffering from a serious functional or cognitive impairment that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

CW argues that he qualifies for relief under this policy statement. (Doc. 419-1 at 20-22). In response, the Government argues that CW has not demonstrated that his cognitive impairment substantially diminishes his ability to provide self-care. (Doc. 424 at 30).[8]

CW has not proffered evidence, nor otherwise convinced the Court, that his cognitive impairment "substantially diminishes his ability to provide self-care." Indeed, there is nothing in the record to indicate that CW cannot feed himself, maintain his hygiene, dress himself, or

---

[8] The Government incorrectly refers to an element of USSG § 1.13(b)(1)(B) that is not at issue here.

otherwise engage in other routine aspects of daily life.  Furthermore, the cases cited by CW in support of this policy statement applying to him are inapposite.

In *United States v. Moore*, JPJ-12-30, 2021 WL 3682312 (W.D. Va. Aug. 19, 2021), the court did not conclude that cognitive impairment was an extraordinary reason for compassionate release. Rather, the court considered, in connection with its § 3553(a) analysis, that the defendant's mental disability was likely to impose extra burdens in the prison setting, and ultimately concluded that the sentence was adequate punishment and deterrence. And, *United States v. Brown*, JSR-05-538, 2022 WL 3369709 (S.D.N.Y. Aug. 1, 2022), considered the defendant's supposed cognitive impairment in combination with his age (*i.e.*, 25) at the time of the offense. The court noted that the defendant may not have even had a mental disability, and that the defendant's low IQ very well could have been a product of limited educational opportunities. This was evinced due to the defendant's ability to amass an impressive record of education certificates while incarcerated. The court stated that the defendant's impoverished upbringing may have slowed his maturation and rendered him at 25 years old more akin to a younger offender in ways that matter for sentencing. In other words, the defendant's cognitive impairment was more a conduit to consider his youthful character to be less than 25 years at sentencing, rather than a standalone factor that constituted an extraordinary basis for relief.

Because it is clear that CW does not qualify for compassionate release under the plain language of USSG § 1.13(b)(1)(B), the Court shall consider his cognitive impairment, and all relevant arguments, in connection with USSG § 1.13(b)(5).

§ 1.13(b)(1)(B)(5) – Other Reasons

As noted, § 1.13(b)(1)(B)(5) provides a "catch-all" provision to allow for a sentence reduction based on a variety or combination of circumstances. Here, CW points to his family

support, cognitive impairment, and rehabilitation as sufficient for this Court to grant under § 1.13(b)(5).[9]

***Family Support***

CW contends that his strong family support can be considered under § 1.13(b)(5) as a basis for relief. CW notes that he plans to live with his mother on release, and that his siblings will be a source of stability and support. (Doc. 419-1 at 23). The Government does not persuasively contend otherwise, but even so, the case law cited by CW for this proposition does not convince the Court. CW cites *United States v. Steele*, JWL-10-20037, 2021 WL 2711176, at *3 (D. Kan. July 1, 2021), but in that case, unlike here, the defendant's brother asserted that employment and reliable transportation were waiting for the defendant upon his release.

In contrast, CW has not claimed to have reliable transportation, and he ***hopes*** to find, rather than ***has secured***, employment as a cook. (Doc. 419-1 at 27). Moreover, in that case, the United States Probation Office had verified that the defendant's brother would provide a stable home. Here, there is no claim that probation verified CW's potential living situation. This is especially concerning, since it appears CW was living with his mother, as he plans to do once more, when he engaged in the conduct underlying his instant conviction. *See* Doc. 165, PSR,

---

[9] It is not patently clear whether CW argues sentencing disparity as a ground for relief under (b)(5). Yet, for the same reasons set forth as to why SW's sentencing disparity cannot support relief under 13(b)(5), the court concludes that CW is also barred from drawing on his sentencing disparity argument here. (Doc. 419-1 at 23). In a similar vein, this CW's argument that his length sentence justifies relief under (b)(5) not only falls flat, but it also takes a nosedive straight into the concrete. The first case cited by CW, *United States v. Robinson*, RRP-89-908, 2022 WL 4119800, at *5 (N.D. Ill. Sept. 9, 2022), is not persuasive since it involved an 80-year-old defendant ***who had already served*** a length sentence of almost 33 years. That case did not stand for the proposition that lengthy sentences generally form a basis for relief. And to the extent it was considered as a basis for relief rather than a militating factor under section 3553(a), it was in combination with his age under the USSG policy statement § 1B1.13 application note (1)(B). The second case, *United States v. Kerby*, JFB-02-336, 2022 WL 16837039, at *9 (D. Neb. Nov. 9, 2022), fares no better. That case distinguished binding precedent by noting that the Eight Circuit in *United States v. Crandall*, 25 F.4th 582, 583 (8th Cir. 2022), had stated that the non-retroactive elimination of stacked § 924(c) charges cannot form a basis for extraordinary relief, but the defendant's case did "not involve multiple § 924(c) counts." Here, CW's case clearly involved multiple § 924(c) counts, and *Thacker*, as discussed *supra* clearly prohibits the consideration of the now-eliminated stacked § 924(c) counts as a basis for compassionate release.

indicating that CW's legal address was his "mother's address," *id.* at 3, that he lived with his mother "the majority of his life," *id.* at 23. And, the Court is mindful that CW's mother's residence was used to stage at least some of the criminal conduct. *Id.* at 12 ("...Brad Williams recruited several individuals to his mother's residence..."). CW also cites *United States v. Resendiz*, BAS-21-143, 2023 WL 7309439, at *2−3 (S.D. Cal. Nov. 6, 2023) – a case that is even less persuasive. In that case, the court considered defendant's obligations of support for his family (emotional, physical, and financial) to constitute an extraordinary and compelling reason for relief, in combination with other factors. Unlike the defendant in *Resendiz*, here, CW would appear to require intensive support from his family, rather than provide it. CW's family support, cannot, on its own, provide a basis for compassionate release under § 1.13(b)(5).[10]

### Cognitive Impairment

CW argues that his cognitive impairments, including his IQ of 72 which constitutes "Borderline Intellectual Functioning" qualifies under this policy statement as an extraordinary and compelling basis for this Court to grant relief. (Doc. 419-1 at 20-23). CW avers that these impairments allowed him to be manipulated into being involved in the conduct underlying his instant conviction. And, at oral argument, CW's counsel indicated that this impairment renders it difficult for him to understand orders given by the BOP and leads him to being mocked and goaded into altercations or other problematic conduct. In response, the Government suggests that CW's cognitive impairment was clearly considered at his sentencing, and so it does not justify a reduction. *Id.* at 31. In reply, CW argues that this Court is not foreclosed from considering CW's

---

[10] In a footnote, CW also discussed *United States v. Norris*, SEB-08-170, 2020 WL 6583084, at *5 (S.D. Ind. Nov. 10, 2020), as standing for the proposition that his viable release plan weighs in his favor under the section 3553(a) factors. However, unlike the defendant in *Norris*, CW has not indicated that his family will provide him with financial support, let alone to what extent. And, the *Norris* defendant had earned several operating licenses while incarcerated, whereas CW does not appear to have earned any specialized certificates or licenses that would increase his employment prospects upon release.

cognitive impairment as a basis for compassionate release, even though it was factored in at sentencing. (Doc. 426 at 21-23).

CW's cognitive impairment is undisputed, and it certainly provides for a more burdensome prison life than those free of mental disabilities. However, the Court is persuaded that CW's cognitive issues, at least for compassionate release purposes, are not so extraordinary as to warrant relief under (b)(5).  As the Parties discussed in the briefing and at oral argument, CW appealed his initial sentence of 552 months imprisonment, on the basis that the district judge failed to consider his cognitive impairment. CW's appeal was successful, and the Seventh Circuit remanded for resentencing and directed the district judge to "***consider his actual disability*** and the combination of his disability with his susceptibility to manipulation by his brother Brad." *United States v. Williams*, 553 F.3d 1073, 1084 (7th Cir. 2009) (emphasis added). Upon considering CW's disability and his susceptibility to manipulation, the district judge sentenced CW to 444 months, a steep reduction from his initial sentence. Because the district judge considered CW's cognitive impairment, this Court is not persuaded that it warrants relief under (b)(5). *See United States v. Wrice*, 2021 WL 7209619, at *1 (7th Cir. Dec. 20, 2021) ("[F]acts known at the original sentencing cannot justify a later reduction."); *United States v. Rimpson*, 2021 WL 6098440, at *1 (7th Cir. Sept. 22, 2021) ("The district judge knew their ages when it imposed the sentences initially, and so that fact provides no reason—let alone an extraordinary and compelling one—to reduce those sentences now.").[11] USSG § 1.13(e) does not save CW's arguments, for while it states that an extraordinary reason need not be unforeseen at the time of sentencing, it does not indicate that a circumstance that was actually known and ***factored*** into an

---

[11] The Court recognizes that, at the hearing, CW took issue with the Government's notice of supplemental authority (Doc. 430). However, the Government was not required to submit a motion for leave in connection with its notice. *See Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1166 (C.D. Ill. Mar. 10, 2022*).* Nor did the filing raise or substantially bolster an argument not otherwise present in the Government's response. And, the Court is not so foolish as to refuse to consider Seventh Circuit case law that speaks directly to an issue under consideration.

imposed sentence must once again be considered when presented in a compassionate release motion. Accordingly, CW's cognitive impairment does not serve as a basis for relief under § 1.13(b)(5).

### Rehabilitation

To be sure, rehabilitation, while it cannot form a basis for compassionate release on its own, may be considered in combination with other factors. *See United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022). CW points to his 3,000 hours of coursework spent working towards a GED, as well as his kitchen work since 2014, as evidence of "commendabl[e]" and "remarkable" rehabilitation. Doc. 419-1 at 22-23. The Government disagrees. Doc. 424 at 31.

In 2023 alone, CW had 5 disciplinary infractions (2 for refusing to obey an order, 2 for refusing his work assignment, and 1 for being insolent to a staff member). And, there is no evidence or argument that mitigates his frequent disciplinary issues. Thus, CW has not evinced exemplary rehabilitation that can fortify his motion under (b)(5) or otherwise.

### Cumulative Consideration of the 13(b)(5) factors

As noted, CW's family support, sentencing disparity, sentence length, cognitive impairment, and rehabilitation cannot form independent grounds for relief under § 1.13(b)(5). And for the same reasons discussed above, these grounds also fail to provide a basis for relief under (b)(5) when combined. Accordingly, CW has not established an extraordinary and compelling reason for early release under § 1.13(b)(5). And as discussed, he has not established such a reason under § 1.13(b)(1) or § 1.13(b)(6). Thus, his motion must be denied for failure to muster a basis for relief. But even assuming arguendo that he had established such a reason, the Court would still deny the motion after weighing the section 3553(a) factors.

***Section 3553(a)***

As noted, a court considering early release under § 3582(c)(1)(A), must determine whether the early release would comport with the § 3553(a) sentencing factors. The Court notes that CW's role in the underlying offense as the "getaway driver" does not insulate him from responsibility. Indeed, the Court cannot ignore that the bank robberies of which he was convicted involved brandished firearms, threats to shoot victims in the head, dragging female victims around by the hair, striking car windows with the butt of a gun, repeatedly pistol-whipping employees in the head, and throwing an employee on the ground. Furthermore, as indicated at the hearing, CW has not once indicated remorse for his actions or taken responsibility. Nor did CW, despite being present at the hearing, ask for an opportunity to take responsibility for his involvement in the offense. Thus, any reduction in CW's sentence would depreciate the seriousness of the offense.

Furthermore, the Court must consider CW's violent tendencies. As noted, the underlying conviction was for a crime of violence. And, CW has three prior battery convictions, two of which involved him punching someone in the face. The passage of time, contrary to CW's suggestion, does not erase these convictions from the Court's consideration. Moreover, while incarcerated CW was disciplined for several violent infractions. In 2011, CW called a staff member a bitch and threatened to stick them with a knife. In 2013, CW possessed a dangerous homemade weapon. In 2014, CW fought with another inmate. In 2017, CW assaulted someone. Thus, the Court cannot conclude that CW would not pose a danger to the public if released.

And, contrary to CW's suggestion, for the same reasons that his family support and rehabilitation do not qualify as extraordinary and compelling reasons to warrant release, they

also fail to convince the Court that the section 3553(a) factors weigh in his favor. Accordingly, the Court must deny CW's motion in light of the section 3553(a) factors.

Entered this 29th day of July 2024.

___s/James E. Shadid____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE